IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition of The Gateway : 
School District to Approve The : 
Arming of School Police Officers : 
Pursuant to 24 P.S. Section 7-778, : 
et seq. : 
                                     : No. 1627 C.D. 2016
Appeal of: Gateway School District : Submitted: January 13, 2017


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE JULIA K. HEARTHWAY, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge


OPINION BY
SENIOR JUDGE PELLEGRINI          FILED: February 15, 2017


        This is an appeal by the Gateway School District (School District) from a decision of the Court of Common Pleas of Allegheny County (trial court) denying its petition seeking permission to employ armed school police officers purportedly as required by Section 778 of the Pennsylvania School Code (School Code).[1] Because, under that provision, the trial court had no discretion to determine whether a school district should implement a program to employ armed school police officers but only to determine whether individuals the School District proposes to hire have the requisite training and possess the character to serve, relief that the School District did not seek, we vacate the trial court's order.

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §7-778.

On June 21, 2016, the School District enacted a Resolution directing its Solicitor to present a petition with the trial court for approval to "designate school police officers . . . [and] authorizing the arming of School Police Officers with . . . the power to arrest, issue citations for summary offenses, and/or detain students until arrival of local law enforcement pursuant to the Pennsylvania School Code, specifically 24 P.S. §7-778." (Reproduced Record (R.R.) at 9a.)

In accordance with the Resolution, the School District Solicitor filed a "Petition to Approve the Arming of School Police Officers pursuant to 24 P.S. 7-778, *et seq*." with the trial court. (R.R. at 2a.) The School District requested the trial court to issue an order allowing:

> 6. Gateway School District seeks to arm all future School Police Officers based upon the extensive training received in accordance with 24 P.S. §7-778 as well as the Pennsylvania State Police Academy.
>
> 7. Gateway School District also desires that such School Police Officers have the power to arrest, issue citations for summary offenses and/or detain students until the arrival of local law enforcement in accordance with 24 P.S. §7-778[.]

(R.R. at 2a-3a.) No approval was sought for specific individuals to be hired as school police officers. On August 21, 2016, a hearing was held on the petition.

At that hearing, school board member Mary Beth Cirucci (Cirucci), the board member behind the creation of the school police force, testified that before the Resolution was enacted, a committee of school board members was

2

created to examine whether the School District should employ police officers. She testified that the committee consulted with Human Resource Manager Patricia Crump (Crump) and two retired police officers, Bryan Key (Key) and Jonathan Pawlowski (Pawlowski), who were both ultimately hired by the School District. She also contacted other school districts that had hired police officers to determine what advantages and disadvantages there were to having School District police.

Cirucci also testified that there are already two police officers in the School District from Monroeville Borough, but the current proposed program would be more expansive and save the $75,000 per police officer now being paid to Monroeville. She explained that only those who were honorably retired from other municipal or state police work with a minimum of 25 years of service would be hired. She believed that this requirement would relieve the School District of providing health insurance coverage for these officers.[2] (R.R. at 100a-102a.)

Another school board member, Chad Stubenbort, testified that police officers were needed in the School District's schools to insure the safety of its students, teachers and staff in order to respond to horrific events such as those that occurred at Sandy Hook and in a neighboring school district.

---

[2] Section 778(g) of the School Code, 24 P.S. §7-778(g), provides "When acting within the scope of this section, school police officers shall, at all times, be employes of the school entity or nonpublic school and shall be entitled to all of the rights and benefits accruing therefrom."

Key and Pawlowski each testified that all applicants receive the required training set forth in Section 778(b.1) of the School Code, 24 P.S. §7-778(b.1). Pawlowski also testified about a support program for this kind of project referred to as ALICE - an acronym for a federal program providing a 40-hour module of specialized training for school police officers. Pawlowski had not taken that program but intended to and to use it to train other officers who would be hired.[3]

On September 16, 2016, the School District sought expedited consideration because it "believes that it is imperative that a decision be made without much further delay as the safety of its students are of the Petitioner's utmost concern and it is their [sic] belief that this proposed police force would not only provide for another layer of defense and protection but may deter or prevent potential catastrophic attacks at their [sic] schools." (R.R. at 141a-142a.)

To that request for expedited consideration, the School District attached a proposed order that reiterated the relief it requested in its original petition requiring the School District make annual reports to the Department of Education as well as implementing policies regarding the responsibilities of its school police officers.[4] It also, for first time, identified 11 individuals who the

---

[3] Crump testified about the training requirements and Department of Education resources and reporting requirements regarding school police officers.

[4] Those paragraphs of the proposed order are:

**(Footnote continued on next page…)**

4

school board had approved as school police officers.  It did not seek trial court approval nor were they mentioned at the hearing.

The trial court denied the petition.  While recognizing that school districts have the right to create their own police force, it found that the implementation of that authorization is given over to the judiciary.  It went on to explain that it denied the petition because more thought was needed as to whether a school police force should be created, as well as what type of training is needed for school police officers who would be armed.  The trial court also stated its concern that once this police force is approved and put into place, it can never be disbanded except by extraordinary efforts by succeeding school boards, and that it had not seen any evidence that the existing police forces serving the School District are not up to the task.  It also lamented that the Department of Education failed to offer proper guidance on the issue and that it believed "broad police powers would clothe these new private police with super discipline powers in the school . . . ." (R.R. at 152a.)  It also took exception to the fact that the School District did not

---

**(continued…)**

5. Gateway School District shall comply with the annual reporting to Department of Education, Office of Safe Schools, in accordance with the Public School Code.

6. Gateway School District will at its discretion develop and implement policies, procedures and rules regarding the responsibilities and duties of these officers in accordance with the law of the Commonwealth of Pennsylvania.

(R.R. at 144a.)

5

involve an educator, mental health professional, school psychologist or child development specialist in deciding to create a school police force. It also expressed concern that students would steal guns from the School Police as a prank. Finally, the trial court found that more study was needed to determine whether giving full police power to what it characterized as independent private police is a good idea because it can lead to abuses, stating:

> [T]he politically charged atmosphere surrounding this issue leads me to conclude that these private police may be used to further particular School Board goals and desires beyond child safety. In the event of a labor dispute between the School District and any of its collective bargaining units, picket lines would be a sharp focus of these private police to the detriment of picketers and serve to chill collective bargaining.

(R.R. at 152a-153a.)

The School District then filed this appeal contending that the trial court abused its discretion by adding additional standards and requirements not found in Section 778 of the School Code, 24 P.S. §7-778, and substituting and applying its knowledge and life experience in denying the School District's request to have armed police officers.

We are nonplussed on how to approach this appeal because we do not agree that a court of common pleas is required under 24 P.S. §7-778 to approve the creation of a school police department or has any role in how it is to be implemented. Section 778(a) of the School Code provides that:

6

(a) Any school entity or nonpublic school may apply to any judge of the court of common pleas of the county within which the school entity or nonpublic school is situated **to appoint such person or persons** as the board of directors of the school entity or administration of the nonpublic school may designate to act as school police officer for said school entity or nonpublic school. The judge, upon such application, may appoint **such person, or so many of them as he may deem proper**, to be such school police officer and shall note the fact of such appointment to be entered upon the records of the court. The judge may, at the request of the school entity or nonpublic school, grant the school police officer the power to arrest as provided in subsection (c)(2), the authority to issue citations for summary offenses or the authority to detain students until the arrival of local law enforcement, **or any combination thereof.**

24 P.S. §7-778(a) (emphases added.)

Under this subsection, the School District may request that a "person or persons" that the trial court approve to be appointed as a police officer be given the power to arrest and detain students, "or any combination thereof." *Id.* Subsection (c) in some ways is a repeat of what is set forth in subsection (a), but sets forth as to what powers a school police officer is given by the trial court. It provides:

(c) **Such school police officer** so appointed shall severally possess and exercise all the following powers and duties:

(1) To enforce good order in school buildings, on school buses and on school grounds in their respective school entities or nonpublic schools. For purposes of this clause, the term "school bus" shall include vehicles leased by the school entity or nonpublic school to

7

transport students and vehicles of mass transit used by students to go to and from school when the school police officer is responding to a report of an incident involving a breach of good order or violation of law.

(2) If authorized by the court, to exercise the same powers as are now or may hereafter be exercised under authority of law or ordinance by the police of the municipality wherein the school property is located.

(3) If authorized by the court, to issue summary citations or to detain individuals until local law enforcement is notified.

Section 778(c) of the School Code, 24 P.S. §7-778(c) (emphasis added.)

Under Section 778 of the School Code, 24 P.S. §7-778, the trial judge does not approve the creation of a school police force but approves the appointment of each police officer "as he may deem proper" that a school district desires to employ. It also allows the school district various options as to the powers that each school police officer has from only allowing that person to "enforce good order"[5] to give a school police officer full police powers,[6] or somewhere in between by limiting the police officer's powers to issuing summary citations only, similar to powers of a code enforcement officer and, for other crimes, detain them until local law enforcement arrives. Section 778(c)(3) of the School Code, 24 P.S. §7-778(c)(3). Presumably, a school district would make that request based on the scope of powers that a school district wants all of its police

---

[5] Section 778(c)(1) of the School Code, 24 P.S. §7-778(c)(1).

[6] Section 778(c)(2) of the School Code, 24 P.S. §7-778(c)(2).

officers to have. The trial court decides whether it is "proper" for that individual to serve as a school police officer within the powers the school district proposes for that person to have.

Now to the School District's request that its school police officers be armed. Subsection (b.1) is the only provision dealing with the arming of school police officers. It provides:

> Every school police officer who has been granted powers under subsection (c)(2) or (3) or has been **authorized to carry a firearm** must, before entering upon the duties of his office, successfully complete training as set forth in 53 Pa.C.S. Ch. 21 Subch. D or have graduated from the Pennsylvania State Police Academy and have been employed as a State trooper with the Pennsylvania State Police.

Section 778(b.1) of the School Code, 24 P.S. §7-778(b.1) (emphasis added.)

Under this subsection then, the trial court does not approve the arming of school police officers. The statute only provides that if a school district authorized an individual to carry a firearm or the trial judge has granted that individual police officer the powers set forth subsections (c)(2) or (3), then the school police officer must have the training this subsection sets forth.

To summarize: Section 778 of the School Code, 24 P.S. §7-778, provides that only the trial judge is to determine if it would be "proper" to approve a school district's request to hire a particular individual who is to have the powers

9

that the school district requests that individual have – keep peace, issue citations or have full police powers. It is not within the trial court's discretion to approve or disapprove whether there should be a school police force or what powers that school police force should exercise. However, who the trial court "deems proper" to serve as a school police officer, after examining the character, competency and integrity of the person for which approval is sought, is within the trial court's discretion.[7]

---

[7] An example of what should be in the petition to approve a person to be appointed as a school police officer to aid the trial court in making that determination is outlined in Monroe Co. R.C.P. 206.8(b), which provides, in relevant part:

> (2) Application for School Police.
>
> (i) An Applicant [School District] or the Solicitor on behalf of Applicant (hereafter "Applicant/Solicitor"), seeking appointment of school police officers pursuant to the Public School Code of 1949, as amended, 24 P.S. § 7-778 (hereafter "The School Code"), shall file an original and one copy of a Petition for Appointment of School Police with the Prothonotary.
>
> (ii) Applicant must comply with all requirements set forth in The School Code and the Petition shall contain the following information:
>
> (a) The name, address, social security number, date of birth, and dates of Act 34 [Section 111 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 1-111] clearance and the FBI investigation clearance for the Appointee(s) to be employed as a school police officer.
>
> (b) The fingerprints of the Appointee(s).
>
> (c) A report issued by the Federal Bureau of Investigation, United States Department of Justice, Investigation Division("FBI") indicating that the Appointee(s) has no arrest record.

**(Footnote continued on next page…)**

Accordingly, because the School District did not ask the trial court to approve specific individuals to be appointed as school police officers and the trial court did not have the authority to inquire into how a school district implemented a program to hire school police officers, the order of the trial court is vacated.

_____
DAN PELLEGRINI, Senior Judge

_____

**(continued…)**

(d) A copy of the Request for Criminal History Record Check issued by the Pennsylvania State Police (PSP) indicating that the Appointee(s) has no arrest record.

(e) A statement by the Applicant representing that Appointee(s) is of good character and repute.

(f) A statement by the Applicant that the Appointee(s) has not resided outside the Commonwealth of Pennsylvania in any other jurisdiction since the FBI and PSP issued the reports verifying that the Appointee(s) does not have a criminal record.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition of The Gateway : 
School District to Approve The : 
Arming of School Police Officers : 
Pursuant to 24 P.S. Section 7-778, : 
et seq. : 
: No. 1627 C.D. 2016
Appeal of: Gateway School District : 

# **O R D E R**

AND NOW, this 15th day of February, 2017, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is vacated.

Jurisdiction relinquished.

_____
DAN PELLEGRINI, Senior Judge